v. James R. Williams, defendant-appellant, arguing for the appellant, Phyllis J. Perko, arguing for the appellee, Victoria E. Joseph. Thank you. Ms. Perko, you may proceed. Phyllis, are you with us? Ms. Perko, you may proceed. I'm with you. Do you hear me now? Yes. Okay. I'm sorry. Apparently, I was muted, but you hear me now? Yes. Thank you. Good morning to everyone, and may it please the court. I represent James Williams, who appeals his conviction for aggravated battery, for which he received the maximum extended term. We have presented two arguments on appeal, the first being that the trial court's preliminary crinkle hearing was inadequate, and the second that the trial court improperly refused to consider evidence at sentencing. Both of these issues emanate from a common factual basis, and that is that Mr. Williams repeatedly claimed at trial that there was error by his trial court in failing to that the date had used in an edited form at trial. The state, in fact, used this video or showed this video to the jury twice, once when it was admitted into evidence, and again at the point of closing argument. Beginning then after the state's initial closing argument, Mr. Williams claimed that his trial court, excuse me, that his trial counsel was ineffective for failing to pursue and introduce into evidence the uncut form of the video. The trial court refused to entertain this motion at the point of closing argument, saying that it should be raised later by motion. Mr. Williams did then duly raise the issue in a pro se motion for new trial, in which he again alleged his counsel's ineffectiveness and the necessity that the uncut video be shown in order to disprove the state's position regarding provocation and self-defense. The trial court did conduct a so-called crankle hearing or a preliminary crankle hearing pursuant to the pro se motion for new trial. We allege that the trial court's procedures in the crankle requirements have been significantly addressed and somewhat refined by two 2020 decisions of the Illinois Supreme Court, one in the case of People v. Roddice and the other in the case of People v. Jackson. These cases make clear that the first step in regard to a defendant's pro se motion for new trial is to examine the factual basis for the motion. The courts make clear that this examination of the factual basis is fact-intensive and that it is conducted on a case-by-case basis, peculiar to the circumstances of the given case. Roddice and Jackson are extremely instructive regarding what is the proper procedure at the preliminary crankle hearing or the first stage crankle hearing. What is particularly outstanding and in contrast to the present case regarding what happened in Roddice and Jackson was that in both cases, trial counsel gave explanations to the court regarding why they took the actions that they took, those actions being the subject of the defendant's claims of ineffective assistance of counsel. And in Roddice and followed then again by the later Jackson, the courts make clear that ordinarily the input of trial counsel is necessary to resolve the initial preliminary crankle determination. That, however, is extremely far from the procedure that the trial court followed in this case. The format of the trial court's consideration in this case was more or less simply to advise Mr. Williams that he could present oral argument regarding his claim of ineffective assistance of counsel. And then indeed, Mr. Williams did present what might be called an oral argument regarding his claim. What is significant about this format when it is compared with the format of the Roddice and Jackson is that there was no interaction between the court and Mr. Williams during this procedure. Rather, Mr. Williams presented his oral argument and the court waited until after that, I'm calling it an oral argument, to give its determination. The other fact that is extremely significant is that trial counsel gave no input whatsoever. Trial counsel merely stood on the written motion that trial counsel had ordered without any input whatsoever regarding the matter of the unedited videotape that Mr. Williams was raising as an error. The court made a finding simply that acknowledged that Mr. Williams had raised a claim about this video, but said that that claim was, quote, completely unsubstantiated, end quote. Well, of course, the single matter that would have substantiated or unsubstantiated the claim would have been the video, the uncut video in question. But at every single point that Mr. Williams raised the matter of showing the video, the court refused him. So, we, as we sit here on appeal, have no knowledge about the content of the video except for Mr. Williams' representation and argument that that video would have been exonerating. So, we maintain that in this case, the trial court did not make specific factual inquiry of Mr. Williams regarding his claim. It did not receive any input from defense counsel. We do not even know if defense counsel investigated the matter of the video. So, we maintain that this procedure was clearly inadequate under the guidelines given by Roddus and Jackson. And we request that the case be remanded for further crankle hearing at which this video will be specifically considered, the uncut version of the video. Our second argument on appeal is that the trial court erred in failing to consider the video at sentencing. After the conclusion of the preliminary crankle hearing, the case went directly into a sentencing hearing. At the end of the sentencing hearing, the defendant, Mr. Williams, made clear that he was in possession of the video and that it could be seen at that time. But the court said, no, this is not the apt time now. So, you can address that in a further motion. So, indeed, Mr. Williams followed the court's direction. He filed a motion for reconsideration of sentence, again asking that the video be viewed. The trial court refused to view the video on the ground that it was a matter outside the record, the record. We will rely on our opening and reply brief for the discussion and argument to the effect that it is clearly the law that matters outside the record are appropriate for consideration at a sentencing hearing, assuming a basic relevancy. Certainly, the nature of the conduct in committing an offense is a major issue in terms of the range of a sentence available and the ultimate sentence that is appropriate and should be imposed. So, without a question, the trial court ruling that the video could not be considered because it was not admitted into evidence was an improper ruling as a matter of law. It is particularly egregious in this case where Mr. Williams had been trying his best and did try his best to get this evidence before the court at an earlier point in the trial. Unfortunately, we cannot make a representation at this point as to the validity of Mr. Williams' claim that the video would have been exonerating. Mr. Perkins, your time is up. Okay. So, I will simply ask them for a remand on this issue as well as the remand on the Crankle issue and thank your honors for your attention. Thank you. Justice Jorgensen, do you have any questions? Judge, are you muted? No, I'm not muted. Am I muted? Sorry. Okay, my bad. Sorry. So, here's my question. With respect to sentencing, if we accept the fact that the trial judge did not use, you know, kind of the tried and true, is it relevant and material for admission of evidence at sentencing, is that subject to a harmless error analysis? Hello? Well, the well-established rule is that if a trial court's ruling is correct, it can be sustained on appeal even though the underlying reasoning was wrong. So, as a general matter, I believe that application of that general rule would indicate that harmless error is an appropriate consideration, but in general. But with reference to the case here under consideration, harmless error cannot be applied because we really do not know the potential force of the evidence in that video. And, you know, and that would, I believe, be my answer if it's not responsive. I'll ask the court for another question. All of the comments about the, I'll call it the unedited version, were that it depicted what was removed from the edited versus the unedited version was events that took place after the conduct for which the defendants stood trial. Is that correct? Well, I don't know that, and I do know that that is a representation that the assistant state's attorney made, and I am not suggesting that she was untruthful in her representation, but it would be a fact that an advocate used evidence through a certain lens, and that lens is generally not the same lens that would be used by the opponent. So, I take the position that we do not know whether that is true or not. Well, here's my point. But here's my point. If that's what the state represented, can we then extrapolate from that that keeping this out throughout the trial and sentencing was a trial strategy? Well, I think that we could have concluded that it was, we might have concluded that it was trial had reviewed the uncut video herself. We don't even have that basic assurance. But don't we don't have a comment from the defendant? I can't recall if it was in one of his written pleadings, or if he made it orally, that he and his counsel reviewed the entire tape together. So, can't we assume, again, that his statement is truthful, and therefore, that counsel did review the uncut version? I'll submit that Mr. Williams' verbiage is profuse here and there in the record. And it is, however, our position that it would be difficult to conclude without some direct questioning of him. So, exactly what he was arguing at a given point. And, I mean, the reason for this, I think, is pretty clear. So, and that is that it was thrust upon him at the time of the hearing on the motion for new trial, that he present what would amount to a closing argument or an oral argument, such as I'm attempting to give at the current time. And I don't think that that is a skill that a layman generally would have. So, I do not recall a specific statement that I read in this record that caused me to interpret it the way Your Honor is interpreting it. But I don't have, you know, that particular... Okay, fair enough. You have also put great weight on your position that trial counsel must be engaged by the trial court with respect to the allegations. So, my question, is that an option for the trial court or is it your position that it is absolutely required in all cases? I think what the Illinois Supreme Court has said in those Roddice and Jackson opinions is that it's the, let's say, usual rule that it is ordinarily necessary. So, here, is it, why is it, or would it have been necessary here? I mean, the trial judge had just sat through the entire trial. Cannot the court rely on its own observations and recollections? Absolutely, it can if it had an observation and recollection. But it had no, but it had absolutely no observation of the edited out portions of this video. So, I certainly would concede that an example would be how we would interpret a piece of trial, how a trial judge might interpret a piece of trial evidence that he heard. So, some sentence or some paragraph extracted from a witness's testimony. Certainly, I might interpret that as saying one thing and trial judge could interpret it as saying another thing. That course interpretation is superior to that of the litigant and can be followed again by the trial court post-trial because it, the court has first-hand knowledge of it and this term first-hand knowledge is used in the Roddice and Okay, um, Justice McClaren, I have no other questions. Thanks. Thank you. Uh, Justice Brennan, do you have any questions? Unmute. Sorry, I just have one question. Doesn't the defendant suggest that he wants to show the Can you hear me now? Yes, a little better. You sounded muted before, like you were talking through a glove. All right, how about, how's this? It's fine. Better. Good, Judge. All right, so, I apologize. So, doesn't the defendant essentially repeatedly say to the judge one way or another, what I want to show you is how she was pulling me back. And in other words, I guess implicitly is that, you know, there wasn't this beating perhaps or they were friendlier than what the testimony would have suggested somehow impeaching the victim. Isn't that the gist of what the defendant continued to tell the court that it wanted to show the court? I do think that that's the gist of it. Well, can't the court then consider that gist in assessing whether it was ineffective to not show the excised portion of the video? Well, I think that when you have the possibility of certainty in a ruling or in a determination, that it is not unreasonable to expect that the court opt for available certainty as opposed to as mild a piece of evidence or as immaterial an item of evidence as the state would have it from some indications in the record, as opposed to the indications from Mr. Williams, who strongly claimed that the video was exonerating. So you could have the certainty, you know, and a lot of circumstances need to be weighed. That's what Jackson and Roddice have to say. One item is that it was represented that the pieces of the video that were edited out was a short matter. I believe it was at the very close of the sentencing hearing that Mr. Williams said, it's only about a minute. So the proper procedure we are claiming would have been to review this video. The trial court had no firsthand knowledge of the video, and he had no input from trial counsel, and he himself did not examine Mr. Williams about what Mr. Williams specifically meant about this video. So I would answer that, yes, the trial court could have relied, as your honor has suggested, if at least the trial court had done one of the things that I've mentioned, and I mean one would have been to let's say cross-examine Mr. Williams or direct examine Mr. Williams, but pin Mr. Williams down on exactly what he meant about this video, and not even that was done, and that we submit is ineffective and inadequate under Roddice and Jackson. All right, I have no additional questions. Thank you, Justice McLaren. Thank you. Ms. Perko, you said exoneration, I believe, relative to what this video would have argued. The trial court believed that Mr. Williams' claim was a claim of exoneration. I have not argued, I don't believe, that this item of evidence in and of itself would have exonerated Mr. Williams. What I believe it potentially would have done was substantially undercut the evidence presented by the state and the value of this edited video. It really cannot, I don't think, be underestimated what force this video had. I mean, first of all, it was twice shown to the jury, and that itself says something with reference to its prominence in the trial, but it is also clear that it is the substantial piece of evidence that was used evidence on which the trial court relied. I could direct your honor's attention, for instance, to pages 561 and 586 of the report of proceedings in this case. On the one page, the court says, the truth is in the video. On the other page, the court says, regarding the video, I saw you hit somebody for no reason. So, I mean, one of the factors in our argument is the centrality of this piece of evidence. So, exoneration may be too strong a word. It is, however, the way the trial court viewed what Mr. Williams was saying, and I think that there's that one could loosely use that term given the centrality of this evidence in the prosecution's case. Are you presuming prejudice insofar as the Krankel hearing, or are you able to express more specifically or explicitly how your client was prejudiced? I think that a prejudice inquiry is inappropriate at the point at which the main argument of the defendant was not properly resolved as an investigative matter. And, you know, and I've explained those points of investigation at which we claim the trial proper mode of conducting a preliminary Krankel hearing, and there is no substitute for that. And the prejudice, I guess, you could say would be presumed when the primary and initial question has not been properly addressed. It has not been properly investigated and therefore not properly determined. And how would a portion of the video that I believe is supposed to show her grabbing him and him swinging but not hitting her have any effect on the sentence? With due respect, Your Honor, we reject the notion that you can conclude what this video shows. I don't know what you mean by we can conclude what the video shows. It's like... We do not know what the video shows. And we don't know that. That is a basic position that, you know, a basic premise of the argument that I am presenting. And that is that we simply do not know what this video would show. I have no further questions. Does anybody on the panel have any questions based upon questions asked by others? I do not. Thank you. Liam, do you have any other questions? I do not. Thank you. Okay. Thank you. Thank you. Thank you. Ms. Joseph, you may proceed with your 10-minute argument. Thank you, Your Honor. Good morning, Your Honors. May it please the Court and counsel, I am Victoria Joseph and I represent the people of the state of Illinois. Both the crankle and sentencing arguments here concern a video which the defendant believed should have been shown at trial and at sentencing. During the defendant's testimony, he first presented on cross-examination what the video showed. After the defendant punched the victim in the hotel room and after he punched the victim in the vestibule, he claimed there was another video of them outside the hotel when he was getting ready to leave that showed the victim pulling on him not to leave, at which time he claimed he mock-punched her again. The defendant's representations were that counsel was aware of this video as the defendant himself viewed it in jail, and that is at record page 472. While the defendant was represented by counsel at trial and at the sentencing hearing, counsel did not introduce the video into evidence. Where the events the defendant wanted to show the jury took place after the completion of the charged battery, defense counsel used sound trial strategy not to introduce the evidence of another attempt to hit the victim that would have mitigated the offense itself or the defendant's sentence. The unplayed video became an issue at the defendant's Krankel hearing when among the defendant's list of ineffective assistance of counsel claims, he made an oral claim that counsel was ineffective for not playing at a trial to corroborate his testimony and to show the state committed perjury. The trial court found all of the defendant's pro se ineffective assistance of counsel claims were either matters of trial strategy or meritless. The unplayed video became an issue again at the hearing on the defendant's pro se motion to reconsider sentence, at which time he wanted the trial court to review the video. The trial court refused to watch the video, finding it was improper for him to look at video beyond what it already saw. In looking at whether there was a sufficient Krankel inquiry here, we look to the purpose of what a Krankel inquiry is to do, and that is to allow a trial court to decide whether to appoint independent counsel to argue the defendant's pro se post trial and effective assistance of counsel claims. The court must conduct some kind of inquiry sufficient to determine the factual basis of the claim. The state maintains that the inquiry here was proper. The trial court provided the claims he raised in his pro se motion, and the defendant explained his claims. He had a list of written claims, and in the middle of discussing those claims, he added the oral claim specifically about the video. Although the court initially tried to limit the defendant's claims to the written ones, the defendant nonetheless asserted his complaint, and we know the trial court considered it because the trial court commented on the video and his findings. It is true that defense counsel did not comment on the claims when the trial court gave counsel the opportunity to respond. However, the trial court did not need additional inquiry into the video from the defendant or defense counsel. As we know from the Supreme Court's decision in banks, the trial court may consider previous complaints about the same issue to explain why the trial court's inquiry during the Krankel hearing itself did not need to be lengthy. The trial court already knew the factual basis for this specific claim from the defendant's testimony at trial and his assertions and the exchanges with the trial court during closing arguments. Those take place mainly on pages 433 through 434 of the record as far as the testimony and his complaints during closing arguments were pages 471 through 472 and 315 through 317. Therefore, the trial court was very familiar with the substance of the defendant's complaint since it was presented in detail on a Krankel inquiry and it is well established that decisions concerning what evidence to present are matters of trial strategy and this complaint fell under such a parameter. Therefore, the trial court did not err in choosing not to appoint counsel and to deny the defendant's pro se motion. As to the decision at the post-judgment hearing, at the sentencing hearing, the defendant was still it was again sound trial strategy not to present the video. It is correct that one of the statutory mitigating factors of mitigation is that a defendant acted under strong provocation. However, strong provocation is based off of the definition of serious provocation, which is usually limited to physical assault, mutual quarrel, or combat and adultery. Strong provocation can encompass more, but it must be direct and immediate. Here there was no direct and immediate provocation from the victim of any kind when the defendant hit her and his statements at the hearing that he hit her out of anger does not support a finding of strong provocation. We are not arguing that the video would not have been relevant and reliable had counsel decided to admit it at the sentencing hearing. However, it was counsel's strategy not to add to the defendant's aggravation, showing another aggressive act against the victim that would not have mitigated his sentence. The issue is whether the trial court had to view the video at the hearing on the pro se motion to reconsider sentence as additional evidence that did not meet the definition of newly discovered evidence. The purpose of a motion to reconsider sentence is not to conduct a new sentencing hearing. The purpose is to bring to the trial court's attention changes in the law, errors in the court's previous application of existing law, and newly discovered evidence that was not available at the time of the hearing. The evidence here was neither evidence of actual innocence that would have exonerated the defendant or even mitigated his sentence, nor was it newly discovered evidence as we know it had been in existence since the time of trial. Thus, under these circumstances, it was not an abuse of discretion to refuse to review the video at post sentencing hearing, and we rely on our harmless error argument in the brief. And we are now available for any questions from the court. Thank you. Justice Jorgensen, do you have any questions? I do. I'll start with where you left off on a motion to reconsider, and you recited the purpose of a motion to reconsider quite succinctly. But the point is here, didn't the trial judge tell him you can raise this at another time? There is no other time other than a motion to reconsider, correct? As far as at the trial level before it goes to appeal, that would be the last resort at the trial level. So where else would he have raised this? I mean, your argument is it was inappropriate argument at a motion to reconsider, but isn't that exactly what the trial judge told him to do? I don't know that that was necessarily the only. He is not only limited at the trial level. Yes, that was the last resort. As far as a post conviction petition, that is an option that was available to him. But we don't know that there was contemplating the point is that he the trial judge tells the defendant, I won't view that tape because it wasn't introduced, doesn't appreciate that he can view it and then tells him to bring it up later. I mean, show me where there's not error in that process. It would have been the shortest distance to have viewed the video. And however, the people maintain that although the court took a very bumpy route, it was not error not to view the video. It was still not an abuse of discretion. And if hold on, your position is that it is not error to refuse relevant and material evidence at a sentencing hearing that you're at a sentencing hearing. Oh, okay. But however, at the sentencing hearing, the defendant was represented by counsel. And counsel chose not to enter the video at the sentencing hearing. Okay. At the end of this sentencing. And this is right after the trial court has denied his crankle hearing on the same ground, right? It is your honor. Okay. Um, all right. You know, I have no further questions. Thank you, Justice McLaren. Thank you. Uh, Justice Brennan, do you have any questions just briefly as to the preliminary inquiry concerning crankle? If I was going to teach a judicial education class, this would not be the model that I would introduce. I can't understand how the judge did not just ask one question of the defendant specifically, what is it that's on the video that you say would have been helpful? And my question to you is, how do we not look at the court's failure to ask that simple question in assessing whether there was a sufficient inquiry at the preliminary hearing? Because we do have two times the defendant represented what he believed was on that video. We have during his cross-examination, he said that there was the video. He explained what happened after he punched the victim in the doorway of the hotel. And that's again on pages 433 through 434 of the record. And he described what happened. And then at the end of that, he said, correct, they got the video. And then again, he represents what was on the video when he was discussing wanting to do his own closing argument. That was on page 315 of the video of the report of proceedings saying that she asked me when I was leaving what happened. I said, Melissa was pulling me to come back in and I threw a punch at her before I actually got in the car. She said to the jury there was no video of that, which is a blatant lie. May I just interrupt? On the pro se motion that he attaches to his defense counsel's pleading, this isn't all spelled out in that pro se motion, is it? No, it is not spelled out. However, it's... Excuse me if I may. Isn't that where a prudent trial judge would say, well, let me explore exactly what it is this defendant's alleging so we don't have to have this discussion on appeal? Because the judge who also presided over the hearing and the trial knew the complaint which had been addressed earlier. So under the holding in banks, again, the inquiry was very brief and unlengthy at the actual Krenkel inquiry because it had already been discussed of what the complaint about the video was during the trial. All right, thank you. I have no additional questions. Thank you, Justice Brennan. Ms. Joseph, I looked up in the dictionary what an inquiry noun is, and it says it's an act of asking for information. And as Justice Brennan pointed out, this seems to fall short insofar as somebody asking the defendant for information. And I might add that in addition to asking the question of the defendant, the judge could have made a much better record if he'd asked some questions of defense counsel relative to when he or she apparently discussed the issue with defendant, how often, where, when, and how, the nature and extent, and asked, do you agree or disagree with what the defendant has represented, and so on and so on. And so it's difficult to accept the argument that this Krenkel hearing was an inquiry. It's ironic that the trial court found that it was unsubstantiated, and then during the sentence hearing when the issue comes up about the video, he says he can't consider it because it's the horse the record. And because it's the horse the record, he determines that the claim is unsubstantiated when it could have been substantiated simply by asking some questions other than the state, that is the defendant and the defense counsel. So the question I have for you is, let's assume for the moment that there was error insofar as the inquiry was concerned, was there any prejudice that arose from the erroneous Krenkel hearings that would require it to be remanded? No, your honor, because I do, I do believe that the content of the video was represented and a matter of trial strategy. It would not have altered the course of the trial or the sentencing whatsoever because we had completed offenses and this video would have added nothing helpful to him. It may have harmed him more based on his representations of what was on it. And we can, we can, you know, consider the entire record at a Krenkel hearing. And although he was already at a maximum extended sentence, this definitely would not have reduced the sentence. I asked you about Krenkel, I didn't ask you about the sentence hearing. But as far as Krenkel too, it would not have altered the course of the trial, the conviction. It would not have, where the completed offense had taken place before there was any additional video, the video would not have mitigated the offense at all. What the victim did after he'd already hit her is not going to be provocation for him to have hit her. Thank you. I have no further questions. Does Ann or Liam have any other questions? I do not. Thank you. I do not. Thank you. Thank you. Thank you, Ms. Joseph. Ms. Perko, you may proceed with your rebuttal. In light of the questions that your honors have posed to the state's representative, we would rely on the arguments that we have already made, unless there are further questions from the court. Thank you. Justice Jorgensen, do you have any questions? I do not. Thank you. Justice Brennan, do you have any further questions? Nor do I. Thank you. I don't either. Thank you very much. The oral argument is completed, and I would ask that the clerk close the case.